# Illinois Official Reports

## Appellate Court

---

### *In re Marriage of Jones*, 2019 IL App (5th) 180388

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF ANNE JONES, Petitioner-Appellee, and DAVID JONES, Respondent-Appellant. |
| District & No. | Fifth District<br>No. 5-18-0388 |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | October 10, 2019<br><br>October 23, 2019<br>October 23, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Madison County, No. 08-D-1041; the Hon. Sarah D. Smith, Judge, presiding. |
| Judgment | Affirmed in part; reversed in part and cause remanded. |
| Counsel on Appeal | Curtis L. Blood, of Collinsville, for appellant.<br><br>Jayni D. Lintvedt and Charles W. Courtney Jr., of Courtney Clark Law P.C., of Belleville, for appellee. |
| Panel | JUSTICE BARBERIS delivered the judgment of the court, with opinion.<br>Justices Welch and Boie concurred in the judgment and opinion. |

**OPINION**

I. Background

This appeal arises from the circuit court's order following this court's remand for further hearing. The background facts of the controversy are set forth in detail in this court's prior order in *In re Marriage of Jones*, 2017 IL App (5th) 160227-U. Because the facts of this case were fully set forth in our prior order, we will restate only those facts necessary to fully understand and consider the current appeal.

In August 2009, the circuit court held a five-day trial on the parties' dissolution of marriage. During trial, Anne testified that the marital residence had been listed for sale at $279,000 in April 2009, with two outstanding mortgages, totaling $170,000. The parties agreed that the residence had roughly $100,000 in equity. To her knowledge, David had paid all mortgage and tax payments. After hearing the evidence, the court took the matter under advisement.

On September 24, 2009, the judgment for foreclosure and sale of the marital residence was entered. On March 25, 2010, the report of sale and the order of possession of the marital residence were entered. No equity remained in the marital residence following the foreclosure sale.

On April 5, 2010, Judge Levy entered the judgment of dissolution of marriage. Judge Levy, without addressing the foreclosure proceedings on the marital residence, ordered the parties to sell the marital residence and divide proceeds. It is unclear from the judgment whether Judge Levy ordered a 60/40 division or an even split of the net proceeds. Moreover, Judge Levy ordered the parties to sell all farm equipment and vehicles and divide the proceeds equally.

On May 4, 2010, Anne filed a motion to amend the judgment of dissolution of marriage, seeking maintenance for the lost equity in the marital residence that resulted from the recent foreclosure. With her motion to amend, Anne filed a petition for adjudication of indirect civil contempt for David's failure to pay the debts associated with the marital residence and split proceeds from the sale of all farm equipment and vehicles. These filings provided the first written notation to the circuit court regarding the foreclosure sale of the marital residence. The following day, David filed a motion to reconsider the judgment of dissolution.

Following a hearing on September 29, 2010, Judge Levy denied David's motion to reconsider and amended the April 5, 2010, judgment. Judge Levy omitted the sentence that evenly divided the net proceeds and clarified a 60/40 division of proceeds from the sale of the marital residence. Specifically, the amended judgment stated the following:

> "*Upon the sale of the property*, David is awarded forty percent (40%) of the net proceeds and Anne is awarded sixty percent (60%) of the net proceeds ***." (Emphasis added.)

Neither party appealed this judgment.

In November 2014, the case was assigned to Judge Mengarelli. Shortly thereafter, Anne filed another petition for adjudication of indirect civil contempt, claiming that she was entitled to $60,000 in lost equity from the foreclosure of the marital residence. Anne also argued that David had failed to sell and evenly split proceeds with her from the sale of farm equipment and vehicles. In response, David filed a motion to dismiss Anne's petition for adjudication of indirect civil contempt, arguing that he could not be held in indirect civil contempt for failing

to pay 100% of the mortgage payments when the marital residence had been foreclosed on prior to the April 5, 2010, judgment. The circuit court denied David's motion to dismiss.

¶ 9 On January 6, 2015, David filed a verified counterpetition for rule to show cause against Anne, alleging that Anne had sold farm equipment following the circuit court's April 2010 order but had failed to split the proceeds with him.[1] David requested Anne be held in indirect civil contempt for failing to split proceeds. Anne responded that, although she had failed to split proceeds with David, she had sold only the diesel fuel tank.

¶ 10 On April 25, 2016, Judge Mengarelli held a hearing on the following outstanding motions: (1) Anne's petition for adjudication of indirect civil contempt, (2) David's verified counterpetition for rule to show cause, (3) David's motion to set child support, and (4) David's verified supplemental counterpetition for rule to show cause. Following a hearing, Judge Mengarelli found David in indirect civil contempt of court and ordered him to pay Anne $15,000 for farm equipment and vehicles he had failed to sell. Additionally, the court determined that Judge Levy had intended for Anne to receive more money from the sale of the marital residence because David was going to receive more assets. The court also found David in indirect civil contempt for his noncompliance associated with the marital residence. The court ordered him to compensate Anne $20,000 in lost equity, which was the difference in the amounts Judge Levy had awarded the parties in the amended April 5, 2010, judgment. Anne was awarded $36,283.27 in total. David filed a timely notice of appeal on May 31, 2016.

¶ 11 On July 13, 2017, this court reversed and remanded the circuit court's order, finding the circuit court was without authority to hold David in indirect civil contempt and then recompense Anne, the aggrieved party, compensatory damages for David's failure to sell farm equipment and vehicles. See *id.* We determined that David should have had the opportunity to purge himself of contempt through compliance, either by selling the remaining equipment in his possession or, alternatively, by paying Anne the value of the property he kept for his own personal use. On remand, we instructed the circuit court to consider the sale of property, including the sales price, as well as the fair market value of any unsold farm equipment and vehicles. We noted that, as part of the original judgment of dissolution entered on April 5, 2010, the parties were required to sell the property and equally divide the proceeds.

¶ 12 Next, we vacated the portion of the circuit court's order holding David in indirect civil contempt and requiring him to pay Anne damages for her lost equity in the marital residence. Although David had the ability to purge himself of indirect civil contempt through the sale of the farm equipment and vehicles, he did not have the same ability to comply where there was no equity following the marital residence foreclosure in March 2010. On remand, we ordered the circuit court to conduct a full hearing to determine the appropriate remedy for David's failure to comply with the April 2010 judgment. Finally, we affirmed the court's order requiring David to pay Anne's attorney fees, which occurred based on the report of proceedings on remand.

¶ 13 On April 16, 2018, Judge Smith held a remand hearing where the following evidence was adduced. First, David testified to the following. David admitted that he had sold a Bobcat for $11,000 and a baler for $1250 following the circuit court's April 2010 order. David did not

---

[1]David alleged that Anne sold the following equipment: a diesel fuel tank, two Bobcat buckets, a spring-tooth harrow, a manure spreader, a post hole digger and two augers, two bush hog mowers, a hay wagon, a diesel pump, and a box blade.

split the proceeds with Anne. He further indicated that he had six pieces of unsold farm equipment, two items located on Franko Lane, his deceased father's property where he currently resided, and four items located on Joe Oros's property.[2] David estimated that the value of the farm equipment was $17,850; however, Anne valued the farm equipment at $40,050. Regarding the marital residence, David admitted that he had been served with the foreclosure papers on the second day of trial in August 2009.

¶ 14    Next, Anne testified to the following. Anne had sold a diesel fuel tank with an attached pump for $200 in July 2010 following the circuit court's April 2010 order. Anne did not split the proceeds with David. Anne also indicated that multiple other items, specifically 10 pieces of equipment, had been left on the couple's shared marital residence (Oldenburg Property) (Exhibit D-7). Anne testified that neither she nor David had access to the equipment on the Oldenburg Property, and she was unaware whether these items were still located there. Regarding the marital residence, Anne testified that she never received notice of the foreclosure and, due to David's inability to pay the mortgage and taxes, she lost $100,000 in equity.

¶ 15    In contrast to Anne's testimony, David's attorney called Austin Jones, the parties' son, who testified to the following. Austin recalled "looking out the garage window one evening, and I saw somebody come and load [farm equipment] up on a flatbed trailer and take them away." According to Austin, Anne spoke with the man before he hauled away "the Bobcat buckets, a fuel tank, the spring-tooth *** two brush hogs *** and a post hole digger." On cross-examination, Austin was unaware, however, of whether Anne had received compensation for the above-mentioned farm equipment.

¶ 16    On June 27, 2018, the circuit court entered its order on remand. According to Judge Smith, the court was tasked with two issues on remand:

> "I. A determination of the fair market value as to the farm equipment and vehicles, a determination as to the property sold by both parties and at what sale price, and the fair market value of any unsold farm equipment and vehicles that still remain, which were required to be sold and proceeds divided pursuant to the Judgment of 4/5/10; and
>
> II. A determination of the appropriate remedy for Respondent's failure to comply with the Judgment of 4/5/10."

As such, the court determined the specific valuations for the sold and unsold farm equipment and vehicles. The court noted that neither party submitted evidence, other than their own individual opinions, on the fair market value of the property in dispute. As a result, after the court averaged the parties' two estimates, it determined that David had either sold or kept property valued at $28,950. As a result, David owed Anne $14,475 for her half share of the property, per the original judgment. Anne's valued property totaled $4725. As a result, Anne owed David $2362.50 for his half share of the property, per the original judgment.

¶ 17    Next, the circuit court determined the appropriate remedy for David's failure to pay the mortgage and taxes on the marital residence. In addressing this issue at the remand hearing, Judge Smith stated:

---

[2]We note that the testimony at the remand hearing regarding the location of certain farm equipment and vehicles is inconsistent with the circuit court's June 27, 2018, order, which provided a detailed list of contested property. The information in this opinion reflects the witness testimony provided at the remand hearing.

"I am not finding him in contempt. The question in front of me is what we should do with his failure to comply with the terms of the judgment of dissolution of marriage."

Following the hearing, the court entered its order awarding Anne $60,000, the amount ordered by Judge Levy in the amended April 5, 2010, judgment, for her share of the lost equity in the marital residence. Judge Smith determined that an award of $60,000 was the appropriate remedy because "Judge Levy awarded Petitioner 60% of the equity in the home in lieu of maintenance. These matters have previously been decided and cannot be changed by the undersigned based on the doctrine of *res judicata*." The court also stated the following:

> "[W]hile the court appreciates the thorough argument made by Respondent's counsel regarding the lengthy and perhaps overly drawn out procedural history of this case, the controversy at hand is a *direct* result of Respondent's failure to comply with the court orders.
>
> *** Respondent claims he lost his job after the order was entered, but did not file a motion to modify the temporary order. The terms of the temporary order which required him to pay the mortgage and the taxes remained throughout the trial *and* through the period of time the judgment was taken under advisement. Respondent did *nothing* to remove this obligation until almost a month after the Judgment of Dissolution was entered. It wasn't until eight months after the Judgment of Foreclosure was entered did he file a motion to attempt to alleviate himself from these obligations, at this point in time it was too late.
>
> For these reasons, the Court finds the appropriate remedy for his failure to comply with the terms of the Judgment of Dissolution of [M]arriage is to award Petitioner $60,000.00 for her share of the lost equity in the marital residence. Judgment is entered in favor of the Petitioner and against Respondent in this amount with payment to be made within 60 days from the date of this order." (Emphases in original.)

¶ 18 On August 3, 2018, Anne filed a motion for pay out requesting the circuit court order David to pay Anne from his 401(k) account. Shortly thereafter, David requested, and the court granted, to stay execution of the court's judgment pending appeal. On David's motion, this court granted him leave to file a late notice of appeal. This appeal followed.

¶ 19                                                          II. Analysis

¶ 20 On appeal, David argues that the circuit court on remand acted contrary to the law of the case and the law of contempt by ordering him to pay compensatory damages. As such, David requests this court to reverse and remand the circuit court's order because it "exceeded its authority just as it did the first time, by ordering a party in contempt of court to pay compensatory damages" for his failure to sell farm equipment and vehicles and pay the mortgage and taxes on the marital residence. In response, Anne argues that the court "actually obeyed the directions in this Court's Rule 23 Order precisely and unambiguously." We will address each issue in turn.

¶ 21                                           A. Farm Equipment and Vehicles

¶ 22 The law-of-the-case doctrine generally bars litigation of an issue previously decided in the same case. *People ex rel. Madigan v. Illinois Commerce Comm'n*, 2012 IL App (2d) 100024, ¶ 31 (citing *People v. Tenner*, 206 Ill. 2d 381, 395 (2002)). This doctrine provides that

questions of law decided on a previous appeal are binding on the circuit court on remand as well as on the appellate court on a subsequent appeal. *Id.* (citing *Norris v. National Union Fire Insurance Co. of Pittsburgh*, 368 Ill. App. 3d 576, 580 (2006)). This doctrine is intended to maintain the prestige of the courts. *Norris*, 368 Ill. App. 3d at 581. That is, "[i]f an appellate court issues contrary opinions on the same issue in the same case, its prestige is undercut." (Internal quotation marks omitted.) *Id.*

¶ 23 It is well recognized that a reviewing court's mandate vests a circuit court with jurisdiction only to take action that complies with the reviewing court's mandate. *McDonald v. Lipov*, 2014 IL App (2d) 130401, ¶ 44 (citing *Fleming v. Moswin*, 2012 IL App (1st) 103475-B, ¶ 28). "A trial court lacks the authority to exceed the scope of the mandate and must obey precise and unambiguous directions on remand." *Id.* Moreover, the correctness of the court's action on remand is to be determined from the appellate court's mandate, as opposed to the appellate court opinion. *Id.* "However, if the direction is to proceed in conformity with the opinion, then, of course, the content of the opinion is significant." *Id.* (citing *Fleming*, 2012 IL App (1st) 103475-B, ¶ 28). If specific directions are not provided, the court on remand should examine the order and determine what further proceedings would be consistent with the appellate court's order. *Id.*

¶ 24 Because the circuit court has no authority to act beyond the dictates of the appellate court's mandate, the only proper issue on a second appeal from the remand is whether the circuit court's order on remand is in accord with the mandate. *Norris*, 368 Ill. App. 3d at 581 (citing *Petre v. Kucich*, 356 Ill. App. 3d 57, 63 (2005)). "After a remand, the trial court is required to exercise its discretion within the bounds of the remand. Whether it has done so is a question of law. [Citations.] A reviewing court determines a legal question independently of the trial court's judgment." *Clemons v. Mechanical Devices Co.*, 202 Ill. 2d 344, 351-52 (2002) (citing *People v. Williams*, 188 Ill. 2d 365, 369 (1999), and *In re Lawrence M.*, 172 Ill. 2d 523, 526 (1996)).

¶ 25 As stated in detail in our previous order, in a civil contempt proceeding in Illinois, a court may imprison or fine for contempt of its orders, but it is without authority to recompense an aggrieved party for his or her damages. *Harper v. Missouri Pacific R.R. Co.*, 282 Ill. App. 3d 19, 30 (1996). We specifically stated in our July 13, 2017, order:

"On remand, we instruct the court to determine what property was sold by both parties, and at what sale price, as well as the fair market value of any unsold farm equipment and vehicles that still remain in the possession of either party, but which were required to be sold and proceeds divided, as part of the original judgment of dissolution." *In re Marriage of Jones*, 2017 IL App (5th) 160227-U, ¶ 39.

As stated earlier, David should be allowed to purge himself of contempt through compliance, either by *selling* the remaining equipment in his possession or, alternatively, *paying* Anne the value of the property he planned to keep for his own personal use. In addressing the valuation of property, the circuit court stated that it had been tasked with determining the fair market value of disputed farm equipment and vehicles and then distributing the proceeds evenly.

¶ 26 On appeal, however, David argues that the circuit court "directly violated the instructions of this Court by ordering David to pay Anne a sum of money" and not allowing him to either sell or pay for the unsold equipment. We find this argument unpersuasive. First, based on the parties' individually submitted price estimates for the value of sold and unsold farm equipment and vehicles, the circuit court averaged the estimates and divided the proceeds. Second, we

find Anne's argument convincing where she states that "David did *not* request additional time to sell the equipment in his possession nor did he state once during trial his intention to sell said equipment." (Emphasis in original.) There were several months, eight to be exact, at which time David could have complied with the original intent of Judge Levy's April 2010 judgment following our July 13, 2017, order. To provide David the ability to sell the remaining six pieces of farm equipment at this point would allow David to further extend litigation, due to his continued inaction, in a case that has been in litigation for a decade. Additionally, we cannot ignore the fact that a court order has been in place since April 2010 regarding the sale of farm equipment and vehicles.

¶ 27    Moreover, we find David's argument fails to take into consideration the circuit court's order on remand directing Anne to pay David half of his share of the farm equipment and vehicles on the Oldenburg Property, per the original judgment. We note that Anne and Austin provided contradictory testimony regarding the farm equipment and vehicles located on the Oldenburg Property. We indicated in our previous order that "Anne's testimony demonstrates that she could not operate and did not have access to the farm equipment and vehicles because David had moved the items to other properties." *Id.* ¶ 33. A review of our order clarifies that "other properties" does not refer to the Oldenburg Property, but to Franko Lane, David's father's property, and Oros's property. Based on the testimony at the remand hearing, the circuit court determined that the value of property that Anne sold or kept in her possession included the farm equipment and vehicles located on the Oldenburg Property. Anne was then ordered to pay David half of the share of that farm equipment.

¶ 28    In conclusion, both David and Anne chose to sell and keep farm equipment and vehicles over the course of this case. Following mandate by this court to carry out the original intent of Judge Levy's April 2010 judgment, the circuit court clarified the specific farm equipment and vehicles each party had sold or intended to keep, which was lacking on the first appeal, and then executed the division of such property. We cannot conclude that the court on remand acted contrary to the law by determining the property that both David and Anne had sold or had in their possession at the time of the remand hearing. Accordingly, we conclude that the court's determination on remand was in accord with our mandate.

¶ 29                              B. Marital Residence

¶ 30    Next, David argues that the circuit court failed to follow the law and this court's mandate regarding the marital residence. Specifically, David asserts that "on remand, the trial court awarded compensation from David to Anne," and in failing to state any legal basis for awarding Anne $60,000, "the judgment on remand is *** an award of compensation for contempt without saying 'contempt.' " Moreover, David argues that he was deprived of his property without due process of law when the court failed to state a legal basis for Anne's award. In response, Anne asserts that the circuit court followed this court's mandate on remand by determining that enforcement of the April 5, 2010, judgment of dissolution of marriage was the appropriate remedy.

¶ 31    This court vacated the circuit court's finding of indirect civil contempt because an individual in contempt must have the ability to purge the contemptuous conduct. *Harper*, 282 Ill. App. 3d at 30. The record reflects that David failed to pay the mortgage and taxes, which resulted in the foreclosure sale of the marital residence. This meant that David did not have the ability to comply with the court's order because David could not list the marital residence for

sale. Because the purge provision of the court's order did not provide David the opportunity to comply with the order, we ordered the court to determine an appropriate remedy, considering that the contempt finding had been vacated, for David's failure to comply with the judgment of dissolution.

¶ 32 We first note, as indicated in our previous order, that Anne did not request, and Judge Mengarelli did not review, Anne's May 4, 2010, motion to amend. Instead, Judge Mengarelli reviewed Anne's petition for adjudication of indirect civil contempt. Thus, during the initial appeal, we determined that outstanding motions remained pending before the circuit court. Second, we find it important to note that we agreed with Judge Mengarelli's determination that Judge Levy was unaware of the foreclosure proceedings during the five-day trial, at the time the judgment of dissolution was entered, and upon entry of the amended judgment of dissolution.

¶ 33 Anne argues that the circuit court on remand modified the original judgment of dissolution. We disagree. Instead, we believe the court enforced the terms of the original judgment, that was later clarified in the amended judgment of dissolution of marriage, which a court has indefinite jurisdiction to do. See *In re Marriage of O'Malley*, 2016 IL App (1st) 151118, ¶ 42 (citing *In re Marriage of Hall*, 404 Ill. App. 3d 160, 164 (2010)). This determination is further supported by Judge Smith's statement on remand:

> "Judge Levy awarded Petitioner 60% of the equity in the home in lieu of maintenance. These matters have previously been decided and cannot be changed by the undersigned based on the doctrine of *res judicata*."

As such, a modification did not take place, as Anne requested and now argues on appeal. However, we find Judge Smith's above statement to be in error, given that " '[i]f a post-trial motion is filed by one or both of the parties within 30 days of the judgment, the trial court retains jurisdiction over the matter until the disposition of any pending post-trial motion.' " *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 409 (2005) (quoting *In re Marriage of Parello*, 87 Ill. App. 3d 926, 931-32 (1980)). Here, the circuit court did not rule on Anne's motion to modify. Consequently, the motion remained pending, thereby preserving jurisdiction in the circuit court.

¶ 34 Moreover, we agree with David that the circuit court on remand ordered him to pay compensatory damages, even though the court's order does not specifically use the word "contempt." Although this court explicitly vacated the contempt finding and requested the court to determine an appropriate remedy following a full hearing, the court's order on remand provides compensation to Anne for David's failure to sell the marital residence, despite the court's specific statement: "I am not finding him in contempt. The question in front of me is what we should do with his failure to comply with the terms of the judgment of dissolution of marriage." Moreover, our determination is further supported by the court's following statement:

> "[W]hile the court appreciates the thorough argument made by Respondent's counsel regarding the lengthy and perhaps overly drawn out procedural history of this case, the controversy at hand is a *direct* result of Respondent's failure to comply with the court orders." (Emphasis in original.)

As stated in our previous order, the foreclosure and sale of the marital residence took place in March 2010, which left no equity in the residence to divide between the parties at the time of the April 2010 order.

¶ 35    The circuit court's $60,000 award to Anne for her share of the lost equity in the marital residence was a determination based on Judge Levy's amended judgment of dissolution of marriage. It is well established under Illinois law that the date of valuing marital assets is the date the judgment of dissolution was entered (*In re Marriage of Suarez*, 148 Ill. App. 3d 849, 857 (1986); *In re Marriage of Brooks*, 138 Ill. App. 3d 252, 260 (1985); *In re Marriage of Frazier*, 125 Ill. App. 3d 473, 476 (1984); *In re Marriage of Rossi*, 113 Ill. App. 3d 55, 60 (1983)), unless the cause is a remanded case and the reviewing court has directed otherwise (750 ILCS 5/503(h) (West 2018)). Specifically, section 503(h) of the Illinois Marriage and Dissolution of Marriage Act provides: "[u]nless specifically directed by a reviewing court, or upon good cause shown, the court shall not on remand consider any increase or decrease in the value of any 'marital' *** property occurring since the assessment of such property at the original trial or hearing, but shall use only that assessment made at the original trial or hearing." *Id.*

¶ 36    Here, the court's award on remand fails to take into consideration the foreclosure, which Judge Levy was unaware of during the five-day trial, at the time the judgment of dissolution was entered, and upon entry of the amended judgment of dissolution. On remand, the court was not considering an increase or decrease in the value of the marital property *since* the assessment of such property at the original trial because, at no point, did the property have any equitable value during the trial. Without knowledge of the foreclosure, Judge Levy explicitly awarded Anne 60% of the sale of proceeds from the intended sale of the marital residence. A sale that could never occur. Without taking into consideration the lack of equity in the residence, the court's order on remand resembles a contempt finding, which is what we vacated in our previous order. See *In re Marriage of Jones*, 2017 IL App (5th) 160227-U.

¶ 37    Although the court's contempt power became useless to enforce the judgment of dissolution regarding the marital residence, the court in this case has equitable remedies at its disposal and should employ them to afford Anne relief. See 750 ILCS 5/503(d)(1), (d)(10)-(11), 504(a)(1) (West 2018). We do not agree with David's argument, however, that Anne should receive nothing because there is no equity in the marital residence. Accordingly, we reverse and remand this specific issue to the circuit court to fashion a remedy that considers the motion to modify where Anne requested maintenance for the lost equity in the marital residence following the foreclosure sale.

¶ 38                                    III. Conclusion

¶ 39    For the above reasons, we affirm the judgment of the circuit court of Madison County ordering the parties to divide the value of proceeds from the sale of sold and unsold farm equipment and vehicles. We reverse and remand with directions for the court to determine an appropriate remedy, after considering the pending motion to modify, regarding the marital residence.

¶ 40    Affirmed in part; reversed in part and cause remanded.